<u>ATTESTATION</u>

I hereby ATTEST that the attached certified list[1] represents a list of the

documents comprising the administrative record of the Bureau of Justice

Assistance in the appeal of *Susan M. Miglino v. Department of Justice*, PSOB Case

No. 2010-152, and that the administrative record is under my official custody and

control on this date.

Hope D. Janke
Director, Public Safety Officers' Benefits Office
Bureau of Justice Assistance
Department of Justice
810 7th Street, N.W.
Washington, D.C. 20531

August 22, 2018

---

[1]     The entries on this Certified List are the entries on the Evidence Log that
accompanied the Director Determination, except for some formatting changes, a
typographical correction, and insertion of more detailed descriptions for various
January 13, 2010, and July 16, 2010, letters from Gregory C. Miglino, Jr. The
Evidence Log numbered documents according to the page number on which the
document began in the administrative-record file; the numbering here has been
switched to be numerically and alphabetically sequential.

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                          **Document Description**

1.      Claim for Death Benefits, submitted by Susan Miglino, dated January
        13, 2010, with list of surviving children and their marital status;

2.      Certificate of Marriage Registration for Gregory Charles Miglino and
        Susan Livingston, certified by the City Clerk of the City of New York,
        January 15, 1968 (signature illegible);

3.      Certificate of Birth for Gregory Miglino, (Certification signature and
        date illegible);

4.      Certificate of Birth for Suzette Miglino, from Brookhaven Memorial
        Hospital, with accompanying Social Security Card, Date of Birth:
        October 27, 1970;

5.      Certificate of Birth for James Joseph Miglino, from Brookhaven
        Memorial Hospital, Date of Birth:  January 3, 1972;

6.      Certificate of Birth for Robert Miglino, from Brookhaven Memorial
        Hospital, Date of Birth:  March 31, 1974;

7.      Certified Transcript of Birth for Jacelyn Miglino, from State of New
        York, Department of Health, Date of Birth:  January 21, 1978;

8.      Report of Public Safety Officer's Death, submitted by Gregory C.
        Miglino, Jr., South Country Ambulance, dated January 13, 2010, with
        list of children and their marital status;

9.      Letter from Gregory C. Miglino, Jr., Chief, South Country
        Ambulance, to Public Safety Officers' Benefits Program (Dear

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                                                    **Document Description**

Sir/Madam), dated January 13, 2010, noting that dispatch logs for emergency response to aid Gregory Miglino were maintained by another agency;

10.     Suffolk County Fire Rescue Incident Report, dated March 26, 2007;

11.     Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, dated July 16, 2010 (RE:  Verification of Benefits);

12.     Email communication between Karen Araujo, PSOB Benefits Specialist, and Gregory C. Miglino, Jr., Chief, South County Ambulance, July 23, 2010;

13.     Email communication between Farrah Surin, PSOB Office, and Gregory C. Miglino, Jr., Chief, South Country Ambulance, dated November 2, 2010;

14.     Letter from Mark Lesko, Supervisor, Town of Brookhaven Long Island, to PSOB Office (Dear Sir/Madam), dated January 12, 2010, with the following enclosures:

     A.     Resolution Submission #1003-007, Meeting Of:  October 16, 2007;

     B.     Adopted Resolution #1003-07, Meeting Of:  October 16, 2007;

15.     Letter from David Moran, Assistant Town Attorney, Town of Brookhaven, Long Island, to Gregory C. Miglino, Jr., President,

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

| <u>No.</u> | <u>**Document Description**</u> |
|---|---|
| | Brookhaven Ambulance Company, Inc., dated December 19, 2007, with enclosure; |
| | A.    Agreement between the Town of Brookhaven and Brookhaven Ambulance Company, Inc., signed by Jack Schnirman, Deputy Supervisor, and Pamela Betheil, Town Clerk, agreement made October 16, 2007, with applicable notaries; |
| 16. | Letter from the Board of Directors of South Country Ambulance, indicating passage of resolution on November 5, 2007, signed by Gregory C. Miglino, Jr., President, and Jamie Johnson, Secretary, South Country Ambulance (undated); |
| 17. | Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to PSOB (Dear Sir/Madam), dated January 13, 2010, re: Gregory Miglino's work hours on March 25, 2007; |
| 18. | Detailed Statement of Circumstances, from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, Responding to request for more detailed 24 hour activity report, dated July 16, 2010; |
| 19. | Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, dated July 16, 2010, subject "Reports for Activity for 24 hrs. prior to death"; |
| 20. | South County Ambulance Sign-In Sheet (Time: 6:56), dated March 25, 2007; |

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|---|---|
| 21. | South County Ambulance Sign-In Sheet (Time: 8:54), dated March 25, 2007; |
| 22. | New York State Department of Health EMS, Trauma - Prehospital Care Reports, dated March 25, 2007; |
| 23. | Certificate of Death for Gregory Miglino, Sr., from New York County Department of Health, Date of Death: March 26, 2007; |
| 24. | Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to PSOB Office (Dear Sir/Madam), dated January 13, 2010, indicating that autopsy of Gregory Miglino was performed; |
| 25. | Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, Re: Toxicology Report, dated July 16, 2010; |
| 26. | PSOB Office Determination, dated January 12, 2011; |
| 27. | Notification of PSOB Office Determination, from Valerie Neal (signing for Hope Janke, PSOB Director), to Susan Miglino, dated February 17, 2011; |
| 28. | Notification of PSOB Office Determination, from Hope Janke, PSOB Director, to Gregory C. Miglino, Jr., Chief, South Country Ambulance, dated February 17, 2011; |
| 29. | Request for Hearing Officer Appeal, from Susan Miglino, to Hope Janke, PSOB Office Director, dated March 15, 2011; |

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|

30.     Email communications between Hope Janke, PSOB Office Director, and Susan Miglino, dated March 15, 2011, through March 21, 2011;

31.     Acknowledgement of Hearing Officer Appeal from Felicia Logan-Epps, PSOB Paralegal Specialist, to Susan Miglino, dated May 5, 2011;

32.     Hearing Officer Transcript, dated June 18, 2012, with the following exhibits:

    A.     Exhibit 1 - New York State Department of Health EMS, Trauma - Prehospital Care Report for Christopher Rupolo, dated March 25, 2007;

    B.     Exhibit 2 - New York State Department of Health EMS, Trauma - Prehospital Care Report, for Thomas Pickering, dated March 25, 2007;

    C.     Exhibit 3 - New York State Department of Health EMS, Trauma - Prehospital Care Report for John Jacobs, dated March 25, 2007, with:

        i.     South Country Ambulance Sign-In Sheet (Time:  6:56), dated March 25, 2007 (This was likely intended to be part of Exhibit 3);

    D.     Exhibit 4 - South Country Ambulance Sign-In Sheet (Time: 8:54), dated March 25, 2007;

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                                **Document Description**

E.        Exhibit 5 - Letter from Jamie Johnson, to "Whom it may Concern," dated June 15, 2012;

F.        Exhibit 6 - Certification for New York State Emergency Medical Technician/Certified First Responder, for Gregory Miglino, Sr.;

G.        Exhibit 7 - South Country Ambulance Non Incident Event Attendance for Gregory Miglino, Sr., Final Date: December 31, 2007;

H.        Centerench Fire Department Emergency Information Sheet, dated March 26, 2007 (Per the index of exhibits, this was likely intended to be Exhibit 8);

I.        Exhibit 9 - Certificate of Death for Gregory Miglino, Sr., from New York State Department of Health, Date of Death: March 26, 2007;

J.        Exhibit 10 – Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, Responding to request for more detailed 24 hour activity report, dated July 16, 2010;

K.        Exhibit 11 - Letter from Robert A. Slutsky, M.D., FACP, FACC, to "Whom it may Concern," dated November 28, 2011;

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

L.     Exhibit 12 - PSOB Office Determination dated January 12, 2011;

M.     Exhibit 13 - New York State Department of Health, Ambulance Service Certificates for Brookhaven Ambulance Company, Inc. D.B.A. South Country Ambulance, Issued:  March 18, 2011, and May 23, 2005;

N.     Exhibit 14 – (1) Letter from the Board of Directors of South Country Ambulance, indicating passage of resolution on November 5, 2007, signed by Gregory C. Miglino, Jr., President, and Jamie Johnson, Secretary, South Country Ambulance (undated); (2) Agreement between the Town of Brookhaven and Brookhaven Ambulance Company, Inc., signed by Jack Schnirman, Deputy Supervisor, and Pamela Betheil, Town Clerk, agreement made October 16, 2007, with applicable notaries; and (3) Letter from Mark Lesko, Supervisor, Town of Brookhaven, to PSOB (Dear Sir/Madam), dated January 12, 2010, with the following enclosures:

   i.      Copy of Resolution Submission #1003-07, Meeting Of: October 16, 2007;

   ii.     Copy of Adopted Resolution No. 1003-07, Meeting Of: October 16, 2007;

O.     Exhibit 15 - Letter from Brian Foley, Supervisor, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance Company, dated December 21, 2006;

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

| **No.** | **Document Description** |
|---|---|

P.    Exhibit 16 – (1) Letter from Kim Brandeau, Commissioner of Finance, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance District, dated July 16, 2007 (provided without worksheet); and (2) Letter from Louis Valentino, Board of Directors, South Country Ambulance District, to Kim Bandeau, Finance Commissioner, Town of Brookhaven Long Island, dated July 31, 2007, with FY2008 Budget;

Q.    Exhibit 17 - Copy of Article 11-AAA - Defined Benefit Service Award Program for Volunteer Ambulance Workers;

R.    Exhibit 18 - Memorandum from GLYNN and MERCEP, LLP, to Karen Wilutis, Esq., Marie Michael, Esq., and Joseph Mineo, dated January 7, 2005;

S.    Exhibit 19 – Letter from Laurie LaFountain, Senior Vice President/Trust Officer, Glen Falls National Bank and Trust Company, to Susan Miglino, dated May 22, 2007 (check not provided with letter) with:

   i.    Letter from Sandra Pangburn, ASA, EA, MAAA, PENFLEX, Inc., to Laurie LaFountain, Glenn Falls National Bank and Trust Company, Re: Town of Brookhaven – South Country Ambulance Service Award Program, dated May 17, 2007;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|

ii.     Letter from George Kalamaras, Public Safety Administrator/Ambulance Coordinator, Town of Brookhaven Long Island, to Gregory Miglino, Chief, South Country Ambulance, dated May 11, 2007, with:

    a.     Town Approval of Points Earned by Gregory Miglino, Sr., signed by Pamela Betheil, Town Clerk, Town of Brookhaven, South Country Ambulance Company Inc., Volunteer Ambulance Worker Service Award Program, dated May 8, 2007;

    b.     Copy of Adopted Resolution #422-07, Meeting Of: March 27, 2007;

    c.     Town of Brookhaven, Volunteer Ambulance Workers' Service Award Program, Designation of Beneficiary Form, signed by Gregory Miglino, Sr., dated December 11, 2003;

T.     Exhibit 20 - South Country Ambulance Service Awards Report, Date Range:  From January 1, 2006 to December 31, 2006;

U.     Exhibit 21 - Letter from Herbert Huff, District Director, IRS, Department of the Treasury, to Brookhaven Ambulance Company Inc., dated Jan. 24, 1995;

V.     Exhibit 22 – (1) Letter from Michael Fink, Grant Coordinator, to Douglas Williams, Director, Department of State Charities,

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                              **Document Description**

New York State Department of Taxation and Finance, dated
May 20, 1991; (2) Letter from Daniel Mihalek, Sales Tax -
Exempt, Organizations Unit, New York State Department of
Taxation and Finance, to Ellen Komosinski, dated November
19, 1990; and (3) Important Notice to Organizations Issued
Exempt Organization Certifications, from New York State
Department of Taxation and Finance (undated);

W.    Exhibit 23 - Certification of Eligibility for Government/Official
      Plates, signed by Gregory C. Miglino, Jr., dated December 18,
      2008, with:

      i.      Photocopy of Vehicle Registration (2012 White
              Chevrolet Suburban);

X.    Exhibit 24 - Suffolk County EMS Advanced Life Support
      Protocol Manual, dated January 2012;

Y.    Exhibit 25 - Public Bulletin from Department of Health
      Services, (RE:  Suffolk County EMS System - Entry
      Requirements for Regional Emergency Medical Advisory
      Committee, ALS Provider Credentialing and Authorization and
      Re-Credentialing/Re Authorization);

Z.    Exhibit 26 - Letter from Dennis Russo, M.D., EMS Medical
      Director, County of Suffolk, Department of Health Services, to
      "Whom it may Concern," dated November 22, 2011;

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

<u>No.</u>                                    **Document Description**

AA.    Exhibit 27 – Westlaw Document for Westchester Rockland
       Newspapers, Inc., v. Kimball, 50 N.Y. 2d 575 (N.Y. 1980);

BB.    Exhibit 28 – Westlaw Document for Ryan v. Mastic Volunteer
       Ambulance Co., 212 A.D. 2d 716 (N.Y. App. Div. 2 Dept.,
       1995);

CC.    Exhibit 29 - Excerpt from Article 1 - Volunteer Ambulance
       Workers' Benefit Law;

DD.    Exhibit 30 – (1) Notification of PSOB Determination for Heidi
       Behr, from Hope Janke, PSOB Director, to Keith Lewin,
       President, Riverhead Volunteer Ambulance Corps, Inc., dated
       February 19, 2008 (redacted information); (2) Notification of
       PSOB Determination for Heidi Behr, from Hope Janke, PSOB
       Director, dated February 19, 2008 (redacted information);  (3)
       PSOB Office Determination for Heidi Behr, dated November
       16, 2007 (redacted information); and (4)        Report of Public
       Safety Officer's Death for Heidi Behr, submitted by Ronald
       Rowe, President, Riverhead Volunteer Ambulance Corps, Inc.,
       dated December 27, 2005 (redacted  information);

EE.    Exhibit 31 – (1) Notification of PSOB Determination for
       William Stone, from Hope Janke, PSOB Director, to Ronald
       Rowe, President, Riverhead Volunteer Ambulance Corps, Inc.,
       dated May 13, 2008 (redacted information); (2) Notification of
       PSOB Determination for William Stone, from Hope Janke,
       PSOB Director, dated May 13, 2008 (redacted information); (3)
       PSOB Office Determination for William Stone, dated April 9,

| No. | Document Description |
|-----|---------------------|
|     | 2008 (redacted Information); (4) Report of Public Safety Officer's Death for William Stone, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 10, 2005 (redacted information); |
| FF. | Exhibit 32 – (1) Letter from Christopher Kent, Deputy Town Attorney, to Barbara Grattan, Town Clerk, Town of Riverhead, dated June 21, 2004, with Agreement between Town of Riverhead Ambulance District and Riverhead Volunteer Ambulance Corps, Inc., signed by Philip Cardinale, Supervisor, and Keith Lewin, President, Town of Riverhead Ambulance District, made on January 1, 2004; (2) Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Riverhead Ambulance Corps, Inc., (Dear Gentlemen), dated May 10, 2004, with Copy of Adopted Resolution # 398, dated May 4, 2004; (3) Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with Copy of Adopted Resolution #733, dated August 1, 2000; (4) Meeting Minutes for Resolution #731, #732 and #733, dated August 1, 2000; (5) Letter from J. Snead, Esq., (Counsel for the Claimant), to Freedom of Information Officer, Town of Riverhead (Dear Sir or Madam), dated April 3, 2012; and (6) Copy of South Country Ambulance Newsletter, dated June 1, 2011; |
| GG. | Exhibit 33 - Copy of South Country Ambulance Company Donation Request Form; |

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

No.                                   **Document Description**

33.     Letter from Rafael Madan, General Counsel, U.S. Department of Justice, Office of Justice Programs, to J. Snead (Counsel for the Claimant), dated March 15, 2012, with the following enclosures (with some redacted information):

         A.     Notification of PSOB Determination for William Stone, from Hope Janke, PSOB Director, to Ronald Rowe, President, Riverhead Volunteer Ambulance Corp, Inc., dated May 13, 2008;

         B.     Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, dated May 13, 2008;

         C.     Letter from Keith Lewin, President, Riverhead Volunteer Ambulance Corps, Inc., to Virginia Hinnant-Thomas, PSOB Benefits Specialist, dated May 7, 2007;

         D.     Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with:

                 i.     Copy of Adopted Resolution #733, dated August 1, 2000;

         E.     Public Safety Officers' Benefits Program, Claimant's Verification of Officer's Life Insurance Policies (for William Stone), signed June 28, 2006;

         F.     Individual Acknowledgement for Claimant's Verification of Officer's Life Insurance Policies, dated June 28, 2006;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|---|---|

G.     Affidavit by Phil Cardinale, Supervisor, Town of Riverhead, dated May 3, 2007;

H.     Certification of Meeting Minutes dated August 1, 200, from Barbara Grattan, Town Clerk, Town of Riverhead, dated May 4, 2007, with:

     i.     Meeting Minutes for Resolution #731, #732, and #733, dated August 1, 2000;

I.     Notice of Decision for William Stone, from State of New York, Workers' Compensation Board, Date of Filing this Decision: January 23, 2006;

J.     Claim for Death Benefits for William Stone, submitted August 31, 2005;

K.     Report of Public Safety Officer's Death for William Stone, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 10, 2005;

L.     PSOB Office Determination for William Stone, dated April 9, 2008;

M.     Hand-Written Note, with heading "RE: Heidi Behr";

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

<u>No.</u>                                    **Document Description**


N.     Notification of PSOB Determination, for Heidi Behr, from
       Hope Janke, PSOB Director, to Keith Lewin, President,
       Riverhead Volunteer Ambulance Corp, Inc., dated February 19,
       2008;

O.     Notification of PSOB Determination for Heidi Behr, from Hope
       Janke, PSOB Director, dated February 19, 2008;

P.     Claim for Death Benefits for Heidi Behr, dated March 3, 2006;

Q.     Report of Public Safety Officer's Death for Heidi Behr,
       submitted by Ronald Rowe, President, Riverhead Volunteer
       Ambulance Corps., Inc., dated December 27, 2005;

R.     PSOB Office Determination for Heidi Behr, dated November
       16, 2007;

S.     Letter from Thomas Nolan, (Counsel to Heidi Behr), to Eric
       Martin, PSOB Benefits Specialist, dated May 17, 2007, with the
       following enclosure;

       i.     Meeting Minutes for Resolution #731, #732, and #733,
              dated August 1, 2000;

T.     Certification of Meeting Minutes, from Barbara Grattan, Town
       Clerk, Town of Riverhead, dated May 14, 2007;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|---|---|

U.    Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with the following enclosure:

        i.    Copy of Adopted Resolution #733, dated August 1, 2000;

V.    Affidavit from Phil Cardinale, Supervisor, Town of Riverhead, dated May 3, 2007;

W.    Notice of Decision for Heidi Behr, from State of New York, Workers' Compensation Board, Date of Filing this Decision: December 21, 2005;

X.    Notice of Decision for Heidi Behr, from State of New York Workers' Compensation Board, Date of Filing of this Decision: March 1, 2006

34.    Gregory C. Miglino, Jr., Chief, South Country Ambulance, Presentation: *South Country Ambulance*, https://www.bellport.com/vnews/vn_seenarchive_2006.htm (last visited March 28, 2018);

35.    Hearing Officer Determination dated December 7, 2012;

36.    Medical Report from Stephen Cina, M.D., P.C., Forensic Pathology Consultants, dated April 16, 2013, with accompanying Curriculum Vitae;

MIGLINO
V.
DOJ

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|

37.    Notice of remand based on enactment of the Dale Long Act Public Safety Officers' Benefits Act of 2012, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated November 27, 2013;

38.    Email from L. Snead (Counsel for the Claimant), to Hope Janke, PSOB Director, dated February 5, 2014, with the following enclosure:

    A.    Memorandum of Board Panel Decision for Gregory Miglino, Sr., signed by Loren Lobban, Mark Higgins, and Freida Foster, Board Members, Administrative Review Division, Workers' Compensation Board, Date of Filing this Decision:  January 3, 2014;

39.    Letter from J. Snead (Counsel for the Claimant), to Susan Miglino, dated April 16, 2014, with the following enclosure:

    A.    Petition for Counsel Fees, from J. Snead (Counsel for the Claimant), to the Honorable Attorney General, dated April 16, 2014, with Exhibits 1 and 2;

40.    Letter from Gregory C. Miglino, Jr., Chief of the Department, South Country Ambulance, to Hope Janke, PSOB Director, dated April 21, 2014;

41.    Email from Eric Martin, PSOB Senior Benefits Specialist, to J. Snead (Counsel for the Claimant), dated July 3, 2014;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|---|---|

42.  Email from L. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 29, 2014, with the following enclosure:

    A.    Letter from J. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 17, 2014;

43.  Notice of Decision for Gregory Miglino, Sr., from State of New York Workers' Compensation Board, Date of Filing of this Claim: December 14, 2012;

44.  PSOB Office Remand Determination, dated July 31, 2015;

45.  Notification of PSOB Remand Determination, from Hope Janke, PSOB Director, to Susan Miglino, c/o J. Snead (Counsel for the Claimant), dated August 25, 2015;

46.  Letter from Robert McMeekin, PSOB Hearing Officer, to Edward Romaine, Supervisor, Town of Brookhaven, dated August 16, 2016;

47.  Letter from Marie Michel, Senior Assistant Town Attorney, Town of Brookhaven Long Island, to Robert McMeekin, PSOB Hearing Officer, dated September 15, 2016;

48.  Hearing Officer Determination dated April 13, 2017;

49.  Notification of Hearing Officer Determination, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated April 25, 2017;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|

50.     Attorney Fee Letter, from Hope Janke, PSOB Director, to J. Snead (Counsel for the Claimant), dated April 25, 2017;

51.     Emailed Request for BJA Director Appeal, from J. Snead (Counsel for the Claimant), to Gary Vasquez, PSOB Paralegal Specialist, dated May 22, 2017;

52.     Acknowledgement of Request for BJA Director Appeal, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated May 26, 2017;

53.     Claimant's Supplemental Submission on Director's Review from J. Snead (Counsel for the Claimant), to the Department of Justice, Office of Justice Programs, dated July 24, 2017, with the following enclosures:

A.      Attachment 1: (1) Letter from J. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 17, 2014; and (2) Email from Eric Martin, PSOB Senior Benefits Specialist, to J. Snead (Counsel for the Claimant), dated July 3, 2014;

i.      Exhibit 1:  (1)      Letter from Mark Lesko, Supervisor, Town of Brookhaven, Long Island, to Public Safety Officers' Benefits Program (Dear Sir/Madam), dated January 12, 2010; (2) Copy of Adopted Resolution #1003-07, Meeting Of:  October 16, 2007; and (3)

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                              **Document Description**

Resolution Submission #1003-07, Meeting Of: October 16, 2007;

ii.      Exhibit 2: Memorandum from GLYNN and MERCEP, LLP, to Karen Wilutis, Esq., Marie Michel, Esq., and Joseph Mineo, dated January 7, 2005;

iii.      Exhibit 3: (1) Letter from George Kalamaras, Public Safety Administrator/Ambulance Coordinator, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance, dated May 11, 2007; (2) Town Approval of Points Earned by Gregory Miglino, Sr., signed by Pamela Betheil, Town Clerk, Town of Brookhaven, South Country Ambulance Company Inc., Volunteer Ambulance Worker Service Award Program, dated May 8, 2007; (3) Copy of Adopted Resolution #422-07, Meeting Of: March 27, 2007; (4) Letter from Sandra Pangburn, ASA, EA, MAAA, PENFLEX Inc., to Laurie LaFountain, Senior Vice Present/Trust Officer, Glens Falls National Bank and Trust Company, dated May 17, 2007; and (5) Letter from Laurie LaFountain, Senior Vice President/Trust Officer, Glen Falls National Bank and Trust Company, to Susan Miglino, dated May 22, 2007;

iv.      Exhibit 4: (1) Notice of Decision for Gregory Miglino, Sr., from State of New York, Workers' Compensation Board, Date of Filing this Decision: December 14, 2012; (2) Notice to Injured Worker from State of New York,

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                                   **Document Description**

Workers' Compensation Board (undated); and (3) Memorandum of Board Panel Decision for Gregory Miglino, Sr., signed by Loren Lobban, Mark Higgins, and Freida Foster, Board Members, Administrative Review Division, Workers' Compensation Board, Date of Filing this Decision:  December 14, 2012;

B.      Attachment 2: Letter from Marie Michel, Senior Assistant Town Attorney, Town of Brookhaven Long Island, to Eric Martin, PSOB Senior Benefits Specialist, dated July 28, 2014;

C.      Attachment 3: Letter from Rafael Madan, General Counsel, Department of Justice, Office of Justice Programs, to J. Snead (Counsel for the Claimant), dated March 15, 2012, with the following enclosures (with some redacted information):

i.      PSOB Office Determination for William Stone, dated April 9, 2008;

ii.     PSOB Office Determination for Heidi Behr, dated November 16, 2007;

iii.    Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, to Ronald Rowe, President, Riverhead Volunteer Ambulance Corp, Inc., dated May 13, 2008;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|
| iv. | Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, dated May 13, 2008; |
| v. | Letter from Keith Lewin, President, Riverhead Volunteer Ambulance Corps, Inc., to Virginia Hinnant-Thomas, PSOB Benefits Specialist, dated May 7, 2007; |
| vi. | Notice of Decision for William Stone, from State of New York, Workers' Compensation Board, Date of Filing of this Claim:  January 23, 2006; |
| vii. | Claim for Death Benefits for William Stone, dated August 31, 2005; |
| viii. | Report of Public Safety Officer's Death for William Stone, submitted by Ronald Row, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 10, 2005; |
| ix. | Hand-Written Note, with heading, "Heidi Behr"; |
| x. | Notification of PSOB Office Determination for Heidi Behr, from Hope Janke, PSOB Director, to Keith Lewin, President, Riverhead Volunteer Ambulance Corps., Inc., dated February 19, 2008; |

CERTIFIED LIST

PSOB Case No. 2010-152

| **No.** | **Document Description** |
|---|---|

xi.   Notification of PSOB Office Determination for Jean Behr, from Hope Janke, PSOB Director, dated February 19, 2008;

xii.   Claim for Death Benefits for Heidi Behr, dated March 3, 2006;

xiii.   Report of Public Safety Officer's Death for Heidi Behr, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps., Inc., dated December 27, 2005;

xiv.   Letter from Thomas Nolan, (Counsel for the Claimant - Heidi Behr), to Eric Martin, PSOB Senior Benefits Specialist, dated May 17, 2007, with the following enclosure:

     a.   Meeting Minutes for Resolution #731, #732 and #733, dated August 1, 2000;

xv.   Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with:

     a.   Copy of Adopted Resolution #733, dated August 1, 2000;

xvi.   Affidavit from Phil Cardinale, Supervisor, Town of Riverhead, dated May 3, 2007;

CERTIFIED LIST

PSOB Case No. 2010-152

**No.**                    **Document Description**

xvii. Notice of Decision for Heidi Behr, from State of New York, Worker's Compensation Board, Date of Filing of this Claim: December 21, 2005;

xviii. Notice of Decision for Heidi Behr, from State of New York, Worker's Compensation Board, Date of Filing of this Claim:  March 10, 2006;

xix. Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with:

    a.    Copy of Adopted Resolution #733, dated August 1, 2000;

xx. Public Safety Officers' Benefits Program, Claimant's Verification of Officer's Life Insurance Policies (for William Stone), dated June 28, 2006;

xxi. Affidavit from Phil Cardinale, Supervisor, Town of Riverhead, dated May 3, 2007;

xxii. Certification of Meeting Minutes of August 1, 2000, from Barbara Grattan, Town Clerk, Town of Riverhead, dated May 14, 2007, with:

    a.    Meeting Minutes for Resolution #731, #732, and #733, dated August 1, 2000;

CERTIFIED LIST

PSOB Case No. 2010-152

| No. | Document Description |
|-----|---------------------|

D.     Attachment 4: (1) Memorandum of Board Panel Decision for Gregory Miglino, Sr., signed by Loren Lobban, Mark Higgins, and Freida Foster, Board Members, Administrative Review Division, Workers' Compensation Board, Date of File this Decision: January 3, 2014; (2) Notice of Decision for Gregory Miglino, from State of New York, Workers' Compensation Board, Date of Filing of this Decision: December 14, 2012; and (3) Notice of Injured Worker for Gregory Miglino, Sr., from State of New York, Workers' Compensation Board, (undated);

54.     Letter from Stephen E. Boyd, Assistant Attorney General, Department of Justice, Office of Legislative Affairs, to Congressman Lee M. Zeldin, dated January 16, 2018; and

55.     Letter from Gregory C. Miglino, Jr., Chief of the Department, South Country Ambulance, to William Doyle, Aide to Congressman Lee Zeldin, dated March 1, 2018.

# APPENDIX   A



**U.S. Department of Justice**

Office of Justice Programs

Bureau of Justice Assistance

*Washington, D.C. 20531*

**Director Determination**
Gregory Miglino
PSOB Claim No. 2010-152

Susan M. Miglino ("Claimant"), the surviving spouse of volunteer Emergency Medical Technician ("EMT") Gregory C. Miglino, Sr., filed a claim with the Public Safety Officers' Benefits ("PSOB") Office seeking benefits based on the March 26, 2007, death of EMT Miglino as provided by 34 U.S.C. § 10281(a) and (k).[1] Pursuant to 28 C.F.R. part 32, subpart F, and as the Director of the Bureau of Justice Assistance ("BJA"), I have conducted a review of the record as described in the attached evidence log. Based on this review, I conclude that the Claimant is not eligible for benefits under the PSOB Act. **Accordingly, for the reasons set forth below, this claim for PSOB Act benefits is denied.**

**Procedural History**

In an application dated January 13, 2010, Claimant filed with the PSOB Office a claim for death benefits.[2]

In a determination dated January 12, 2011, the PSOB Office denied the claim on the basis that EMT Miglino was not a public safety officer as defined by the PSOB Act and implementing regulations. In its analysis, the PSOB Office found that the entity that EMT Miglino served, South Country Ambulance, was not a public agency or instrumentality of a public agency and that EMT Miglino was not an officially recognized or designated public employee member of a rescue squad or ambulance crew as defined in 28 C.F.R. § 32.3. The PSOB Office provided the Claimant with notice of this determination by letter dated February 17, 2011.

By email and letter dated March 19, 2011, the Claimant filed a timely request for a hearing officer review the PSOB Office determination. In a letter dated May 5, 2011, the PSOB Office informed the Claimant that the claim was assigned to Hearing Officer Robert McMeekin, who held a hearing on June 18, 2012, conducted a de novo review of the claim file, and rendered a determination denying benefits on December 7, 2012. Hearing Officer McMeekin found that EMT Miglino was not a public safety officer and not serving a public agency in an official

---

[1] When the Claimant filed for PSOB death benefits, the PSOB Act was codified at 42 U.S.C. §§ 3796 *et seq.* Since the time of the initial filing, the Office of Law Revision Counsel reorganized certain existing provisions of the United States Code in a new Title 34. Pursuant to this reorganization, the provisions of the PSOB Act are now located in Title 34, chapter 101, subchapter XI, and accordingly, the citations in this determination are, generally, to the new location of the PSOB Act in the Code.

[2] None of EMT Miglino's children filed a claim in this matter, and in any event, none satisfies the definition of "child" in 34 U.S.C. § 10284(3) or satisfies the predicate conditions specified at 34 U.S.C. § 10281(a)(6).

capacity, and also found that the Brookhaven Ambulance Company, doing business as South Country Ambulance, was an independent contractor to the Town of Brookhaven, New York.

By letter dated November 27, 2013, the PSOB Office notified the Claimant that the claim would be remanded to the PSOB Office for reconsideration in light of the then-recently enacted Dale Long Public Safety Officers' Benefits Improvement Act of 2012 ("Dale Long Act").

In a determination dated July 31, 2015, the PSOB Office denied the claim for benefits finding, among other things, that South Country Ambulance was not a public agency and that the Dale Long Act provisions amending the definition of "member of a rescue squad or ambulance crew" were not retroactive to the date of EMT Miglino's fatal heart attack. The PSOB Office provided the Claimant with notice of this determination by letter dated August 25, 2015. Pursuant to the terms of the remand, the claim was automatically sent back to the hearing officer for review on September 18, 2015.

In a determination dated April 13, 2017, the hearing officer concluded that Mrs. Miglino was not eligible for benefits. In reaching this conclusion, he found that EMT Miglino was not an employee of a public agency,[3] that the relationship between the Town of Brookhaven and the ambulance company was that of a unit of government and an independent contractor,[4] and that the town, through its attorneys, had denied responsibility for the acts and omissions of the ambulance company. As a result, he found that the ambulance company was not an instrumentality of the Town of Brookhaven.[5] The PSOB Office provided Claimant with notice of this determination by letter dated April 25, 2017.

In an email message sent May 22, 2017, counsel for Claimant informed the PSOB Office that Claimant requested review of the hearing officer's determination by the BJA Director. The PSOB Office acknowledged Claimant's request by letter dated May 26, 2017. On July 28, 2017, Claimant's counsel submitted additional evidence and argument in a document captioned "Supplemental Submission on Director's Review" ("Supplemental Submission").

## Background

The record shows that, from sometime in 2000 through the date of his death, Gregory Miglino, Sr., served as a volunteer EMT for the Brookhaven Ambulance Company, Inc., doing business as South Country Ambulance ("Ambulance Company"). On March 25, 2007, EMT Miglino responded to four emergency calls while he was on-duty from 5:00 a.m. until 7:00 p.m., providing emergency care on two of these.[6] On the scene of a motor vehicle crash he responded to at 9:31 a.m., he treated and helped to extricate a 42-year old victim from the wreck.[7] Ambulance Company Administrative Chief Amy Price reported that EMT Miglino complained

---

[3] Hearing Officer determination, p. 6, dated April 13, 2017.
[4] Id. at 7.
[5] Id. at 8.
[6] Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance (describing EMT Miglino's activities on March 25, 2007) to PSOB Office, dated January 13, 2010.
[7] Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, Re: Detailed Statement of Circumstances, to Karen Araujo, PSOB Office, dated July 16, 2010.

of chest pain that he believed[8] to be a muscle pull as a result of his efforts. Mrs. Miglino also reported that Mr. Miglino complained of chest pain that evening.[9] The following morning, EMT Miglino went to a gym to play racquetball, as was his custom at least three times a week, and began exercising at approximately 6:35 a.m. Shortly thereafter, at approximately 6:55 a.m., he grabbed his arm, complained of difficulty breathing, and collapsed.[10] Emergency personnel responded and determined that EMT Miglino was in cardiac arrest. He was transported by ambulance to Stonybrook University Hospital, where resuscitative attempts were unsuccessful. No autopsy or toxicology tests were performed.[11] The death certificate, signed by Thomas Fischer, M.D., attending physician, lists the cause of death as (A) cardiac arrest due to or as a consequence of (B) coronary artery occlusion.

## Discussion

*Amendments to the definition of Public Safety Officer*

     In January 2013, the Dale Long Act amended the PSOB Act's definition of "public safety officer," by revising the definition of "member of a rescue squad or ambulance crew" to include employee and volunteer members of rescue squads or ambulance crews that are part of private, nonprofit entities engaging in rescue activity or providing emergency medical services as part of an official emergency response system.[12] Before enactment of the Dale Long Act, the statutory definition limited rescue squad or ambulance crew member status to "officially recognized or designated *public employee member[s]* of a rescue squad or ambulance crew."[13]

     The Dale Long Act's effective date provisions—as amended in Public Laws 114-326 and 113-66—makes the Dale Long Act amendments immediately applicable upon that Act's enactment "to any matter pending, before [BJA] or otherwise, on the date of enactment of th[e Dale Long] Act, or filed, or accruing after that date."[14] The Dale Long Act's effective date provisions have two exceptions—one of which is relevant to determination of this claim: "[f]or a member of a rescue squad or ambulance crew (as defined in section 1204(7) of title I of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by this section), the amendments made to section 1204 of the Omnibus Crime Control and Safe Streets Act of 1968 ([34 U.S.C. 10284]) by this Act shall apply to injuries sustained on or after June 1, 2009."[15] As EMT Miglino's heart attack predates the effective date for the revised definition set forth in the

---

[8] Hearing transcript ("Tr.") 30, June 18, 2012.

[9] Tr. at 37.

[10] Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Office, 2, dated July 16, 2010.

[11] Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Office, *Re: Toxicology Report*, dated July 16, 2010; letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance (describing autopsy status), to PSOB Office, dated Jan. 13, 2010.

[12] Pub. L. No. 112-239, § 1086(b)(1)(E)(iv), 126 Stat. 1964, 1967 (2013); *see also* 34 U.S.C § 10284(7), (9)(D).

[13] 42 U.S.C. § 3796b(7) (2006) (emphasis added).

[14] Pub. L. No. 112-239, § 1086(d)(1), 126 Stat. 1964, 1969 (2013), as amended by Pub. L. No. 113-66, div. A, title X, § 1091(b)(7), 127 Stat. 672, 876 (2013); and by Pub. L. No. 114-326, § 2(c), 130 Stat. 1968, 1973 (2016).

[15] Pub. L. No. 112-239, § 1086(d)(2)(A), 126 Stat. at 1969, as amended by Pub. L. No. 114-326, § 2(c), 130 Stat. at 1973; 28 C.F.R. § 32.4(d) (functionally placing "heart attacks" within the scope of "injuries," for purposes of statutory effective-date provisions).

Dale Long Act, the definition of "member of a rescue squad or ambulance crew" in effect on the date of EMT Miglino's heart attack—March 26, 2007—applies to this claim.

The Dale Long Act's amendments to what is now codified at 34 U.S.C. § 10281(k), however, apply to "heart attacks, strokes, and vascular ruptures sustained on or after December 15, 2003," and those amendments, therefore, *are* applied to EMT Miglino's heart attack. Additionally, all other amendments made by the Dale Long Act to the PSOB Act apply pursuant to the Dale Long Act's general effective date provisions. And, as a result of the amendments made by Dale Long Act, PSOB implementing regulations in effect on the date of this determination apply to this claim.[16]

*Public Safety Officer Status*

A claimant seeking payment of a death benefit under the PSOB Act "has the burden of persuasion as to all material issues of fact, and by the standard of proof of 'more likely than not.'"[17]

The threshold inquiry for a claim for PSOB death benefits predicated on a fatal heart attack under 34 U.S.C. § 10281(k) is whether the claimant's decedent was a public safety officer as defined by the PSOB Act and its implementing regulations as of the time of the decedent's fatal heart attack. The PSOB Act, in effect on March 26, 2007, defined a public safety officer, in pertinent part as "an individual serving a public agency in an official capacity, with or without compensation, as a law enforcement officer, as a firefighter, as a chaplain, or as a member of a rescue squad or ambulance crew[.]"[18] A "public agency" was defined as "the United States, any State of the United States . . . or any unit of local government, department, agency, or instrumentality of any of the foregoing[.]"[19] An individual was a member of a rescue squad or ambulance crew only if the individual was "an officially recognized or designated public employee member of a rescue squad or ambulance crew[.]"[20]

Implementing regulations, at 28 C.F.R. § 32.3, provide additional definitions relevant to this matter:

> *Public employee* means—
> (1) An employee of a government described in the Act, at 42 U.S.C. 3796b(8), (or of a department or agency thereof) and whose acts and omissions while so employed are legally those of such government, which legally recognizes them as such (or, at a minimum, does not deny (or has not denied) them to be such); or
> (2) An employee of an instrumentality of a government described in the Act, at 42 U.S.C. 3796b(8), who is eligible to receive disability

---

[16] 34 U.S.C. § 10287.

[17] *See* 28 C.F.R. § 32.5(a) ("Except as otherwise may be expressly provided in the Act or [the implementing regulations], a claimant has the burden of persuasion as to all material issues of fact, and by the standard of proof of 'more likely than not.'").

[18] 42 U.S.C. § 3796b(9)(A) (2006).

[19] 42 U.S.C. § 3796b(8) (2006).

[20] 42 U.S.C § 3796b(7) (2006).

4

benefits (or whose survivors are eligible to receive death benefits) from such government on the same basis as an employee of that government (within the meaning of paragraph (1) of this definition), or his survivors, would.

*Employee* does not include—

    (1) Any independent contractor; or

    (2) Any individual who is not eligible to receive death or disability benefits from the purported employer on the same basis as a regular employee of such employer would.

*Independent contractor* includes any volunteer, servant, employee, contractor, or agent, of an independent contractor.

*Instrumentality* means entity, and does not include any individual, except that no entity shall be considered an instrumentality . . . unless, as of the injury date,

    (1) The entity—

        (i) Is legally established, -recognized, or -organized, such that it has legal existence; and

        (ii) Is so organized and controlled, and its affairs so conducted, that it operates and acts solely and exclusively as a functional part of the relevant government, which legally recognizes it as such (or, at a minimum, does not deny (or has not denied) it to be such); and

    (2) The entity's—

        (i) Functions and duties are solely and exclusively of a public character;

        (ii) Services are provided generally to the public as such government would provide if acting directly through its public employees (*i.e.*, they are provided without regard to any particular relationship (such as a subscription) a member of the public may have with such entity); and

        (iii) Acts and omissions are, and are recognized by such government as (or, at a minimum, not denied by such government to be), legally—

            (A) Those of such government, for purposes of sovereign immunity; or

            (B) The responsibility of such government, for purposes of tort liability.

*Public employee member of a squad or crew* means a member of a squad or crew who is a public employee under the auspices of whose public agency employer the squad or crew operates.

*Rescue squad or ambulance crew* means a squad or crew whose members are rescue workers, ambulance drivers, paramedics, health-care responders, emergency medical technicians, or other similar workers, who—
> (1) Are trained in rescue activity or the provision of emergency medical services; and
> (2) As such members, have the legal authority and –responsibility to—
>> (i) Engage in rescue activity; or
>> (ii) Provide emergency medical services.

*Official capacity*—An individual serves a public agency in an official capacity only if—
> (1) He is officially authorized, -recognized, or -designated (by such agency) as functionally within or a part of it; and
> (2) His acts and omissions, while so serving, are legally those of such agency, which legally recognizes them as such (or, at a minimum, does not deny (or has not denied) them to be such).

<u>Agreement between the Town of Brookhaven and the Ambulance Company</u>

In November 2007, the Town of Brookhaven ("Town"), on behalf of the South Country Ambulance District,[21] and the Ambulance Company entered into an agreement under which the Ambulance Company agreed to provide emergency medical and ambulance services to the Town.[22] The agreement identified the Ambulance Company as a non-profit organization having the "sole right" to provide emergency medical and ambulance services within the respective ambulance district.[23] The Ambulance Company agreed to provide personnel and equipment for providing services to the ambulance district pursuant to a budget mutually agreed to by the Ambulance Company and the Ambulance District,[24] and the agreement prescribes a budget process by which the Town would disburse funds collected from the Ambulance District to the Ambulance Company at specified intervals.[25]

The agreement between the Town and Ambulance Company includes a hold-harmless clause in which the Ambulance Company agrees to indemnify, defend, and hold harmless the Town, its employees, elected officials, and designated representatives "from any claim, cost, loss, or expense . . . arising out of the performance or failure of performance by the Company."[26]

---

[21] Under New York law, the town board of a town may establish "improvement districts" including "ambulance districts." N.Y. Town Law § 198 (McKinney, 2018). With respect to an ambulance district, a town board may, among other things, provide emergency medical service within the boundaries of such a district and acquire vehicles for such purposes, or contract with an organization to provide such service and supply, and staff such vehicles. *Id.* at 10-f.

[22] Agreement between the Town of Brookhaven on behalf of the South Country Ambulance District and the Brookhaven Ambulance Company, Inc., d/b/a as South Country Ambulance, dated November 9, 2007. The terms of the agreement provide that it is effective from January 1, 2007, until December 31, 2011, unless ended sooner.

[23] *Id.* at 2.

[24] *Id.* at 4.

[25] *Id.* at 6.

[26] *Id.* at 10.

The agreement also requires the Ambulance Company to purchase workers' compensation and disability benefit insurance for its employees.[27] In addition to requiring the purchase of comprehensive general liability insurance and automobile liability insurance, the agreement requires that the Ambulance Company purchase and maintain additional liability insurance naming the Town as an additional insured in the amounts of $2,000,000 and $5,000,000 for various circumstances as well as a specific "errors and omissions policy" with a combined single limit at least $1,000,000 for a single occurrence and $2,000,000 in the aggregate.[28]

### Claimant's Argument

The Claimant asserts, through counsel, that EMT Miglino was a public safety officer under the PSOB Act. In support of this, Claimant asserts that the Town is a public agency, that South Country Ambulance was designated by the Town to perform a governmental function (*i.e.*, ambulance service), that the opinion of the Town Attorney as to the Town's tort liability was contrary to New York State law, that South Country Ambulance was an instrumentality of the Town of Brookhaven, and that two other PSOB claims involving "identical circumstances" with volunteer ambulance services in New York State found the EMTs to be public safety officers.[29]

Additionally, in the course of this claim, Claimant has offered several theories on which the Ambulance Company should be considered an instrumentality of the Town. Claimant has offered argument that the Ambulance Company is essentially a governmental entity as it is funded by tax dollars gathered from an ambulance district authorized by New York State law and is supervised by the Town through a budgeting process set out in the agreement.[30] In this context, Claimant has also noted that ambulances are purchased with public funds and that, under the agreement, the Town has the right of first refusal when the Ambulance Company decides to sell a vehicle purchased with such funds.

Claimant has cited New York State Freedom of Information Law (FOIL) cases holding that volunteer ambulance companies must disclose information to the public under the FOIL, just as a government agency would be required to, for the proposition that volunteer ambulance companies are indistinguishable from the governmental entity they serve.[31] Claimant has also cited the Volunteer Ambulance Workers Benefit Law for the proposition that an employee-employer relationship exists between the volunteer and the contracting political subdivision.[32]

### Employee of a Governmental Entity or a Department or Agency of Such Government

The record shows that at the time of his death in March 2007, Gregory C. Miglino, Sr., served as a volunteer EMT for the Ambulance Company, a non-profit corporation established under the laws of the State of New York. Based on the evidence of record including his

---

[27] *Id.* at 11.

[28] *Id.* at 11-13.

[29] Claimant's Supplemental Submission on Director's Review ("Supplemental Submission"), Claim No. 2010-152, 4-10, dated July 24, 2017.

[30] Letter from J. Lee Snead, Counsel for Claimant, to Eric Martin, PSOB Office, *Your E-Mail Information Request of July 13, 2014*, 4-6, dated July 17, 2014.

[31] *See* Tr. 97; Hearing Exhibit 27.

[32] *See* Tr. 63-74; Hearing Exhibit 17.

certification from the State of New York as well as his record of participation in "EMS Incidents" as documented in the record, I find that he was trained in rescue activity and had both the legal authority and responsibility to provide emergency medical services. As the Ambulance Company is not a public agency as defined in 34 U.S.C. § 10284(8), however, I find that EMT Miglino was not "[a]n employee of a government described in the Act, at [34 U.S.C. § 10284(8)], (or of a department or agency thereof)[.]" [33]

Employee of an Instrumentality of a Government Entity

The central issue in this claim is whether the Ambulance Company, under PSOB regulations, was "an instrumentality of a government described in the Act, at [34 U.S.C. § 10284(8)] . . . whose [employees or employees'] survivors are eligible to receive death benefits[] from such government on the same basis as an employee of that government . . . or his survivors, would."[34]

For an entity to be an "instrumentality" of a government under the PSOB regulations, it is necessary, among other things, that the unit of government recognize—or, at a minimum, not deny—that the acts and omissions of the entity operating on its behalf are legally (1) those of the unit of government for purposes of sovereign immunity, or (2) the responsibility of the unit of government for purposes of tort liability.[35] In the course of this matter, a legal representative of the Town denied that the Town had responsibility for the acts or omissions of the ambulance company:

> In response to your [the hearing officer's] specific questions:
>
> (1) Does the Town of Brookhaven recognize South Country Ambulance Company's acts and omissions to be legally those of the Town of Brookhaven, for purposes of sovereign immunity?
>
> No, the Town of Brookhaven does not recognize South Country Ambulance Company's acts and omissions to be legally those of the Town of Brookhaven, for purposes of sovereign immunity.

---

[33] *See* 28 C.F.R. § 32.3 (definition of *Public employee*, ¶1). 42 U.S.C. §3796b(8) was reclassified to 34 U.S.C. § 10284(8) effective September 1, 2017; the list of government entities set forth in the definition is the same as it was at the time of EMT Miglino's fatal heart attack.

[34] *See* 28 C.F.R. § 32.3 (definition of *Public employee*, ¶ 2).

[35] *See* 28 C.F.R. § 32.3 (definition of *Instrumentality*, ¶ (2)(iii)); *see also* 71 Fed. Reg. 46028, 46034 (Aug. 10, 2006) (PSOB final rule) ("in order for an entity to be considered an 'instrumentality' of a public agency, its acts and omissions must be similarly legally recognized by a public agency by cloaking the entity's acts and omissions with its sovereign immunity or assuming tort liability for them").

(2) Does the Town of Brookhaven recognize South Country Ambulance Company's acts and omissions to be legally the responsibility of the Town of Brookhaven, for the purposes of tort liability?

No, the Town of Brookhaven does not recognize South Country Ambulance Company's acts and omissions to be legally the responsibility of the Town of Brookhaven, for the purposes of tort liability.[36]

Through counsel, Claimant asserts that South Country Ambulance is in fact an instrumentality of the Town of Brookhaven. In support of this, counsel argues that the Town's statement that it is not liable in tort and does not extend coverage under sovereign immunity for the acts or omissions of South Country Ambulance is not credible because it is inconsistent with New York law. More specifically, counsel cites case law for the proposition that New York State has waived sovereign immunity for its municipal entities under State law,[37] and that tort liability can attach to a Town for the negligent acts of its contracted ambulance companies.[38] Counsel also suggests that, as an employee or agent of the Town, the Town Attorney would not acknowledge in writing that the Town is responsible for the tort liability of its contracted entities.

Paragraph (2)(iii) of the regulation defining *Instrumentality* requires that the unit of government recognize (or, at a minimum, not deny) that the acts and omissions of the entity operating on its behalf are those of such government.[39] The Town of Brookhaven has expressly denied such responsibility. That the State of New York may have waived its sovereign immunity in law thereby removing from its political subdivisions such immunity from suit,[40] or that New York case law may indicate that a municipality may be liable for the tortious acts of its volunteer ambulance company members in some circumstances[41] does not negate the regulation's requirement that the Town must take legal responsibility for the acts and omissions of an entity operating on its behalf for such entity to be considered an instrumentality for purposes of the PSOB program.

Moreover, the Town's assertion that it has not taken legal responsibility for the acts and omissions of the ambulance company is supported by other facts of record, including the hold-harmless clause and indemnification requirements in the contract for ambulance services. If the Town had taken legal responsibility for the acts or omissions of the Ambulance Company, it

---

[36] Letter from Marie M. Michel, Senior Assistant Town Attorney, to Robert McMeekin, Hearing Officer, *RE; Relationship between the Town of Brookhaven and the South Country Ambulance Company*, dated Sept. 15, 2016. To the extent that these official statements from the Town Attorney's Office may constitute "evidence [or] findings of fact presented by a . . . local . . . administrative . . . agency regarding eligibility for death . . . benefits," 34 U.S.C. § 10285(b)(2) would require BJA to "give substantial weight" thereto.

[37] *See, e.g.*, N.Y. Ct. of Claims Act § 8 (McKinney, 2018) (providing that "[t]he state hereby waives its immunity from liability and action and hereby assumes liability and consents to have the same determined in accordance with the same rules of law as applied to actions in the supreme court against individuals or corporations, provided the claimant complies with the limitations of this article").

[38] Supplemental Submission at 5-7.

[39] 28 C.F.R. § 32.3 (definition of *Instrumentality*).

[40] *See Florence v. Goldberg*, 375 N.E.2d 763, 766 (N.Y. 1979).

[41] *See Ryan v. Town of Riverhead*, 117 A.D.3d 707 (N.Y. App. Div. 2d Dept. 2014) (permitting a personal injury claim against a Town for actions of volunteer ambulance company driver operating emergency vehicle owned by the Town).

would have no need for the indemnification provisions in the agreement. Finally, to the extent that the Town wished to assume legal responsibility for the acts or omissions of its ambulance companies, I am aware of no provision in New York State law prohibiting the Town from assuming legal responsibility for the acts or omissions of an independent contractor working on its behalf.[42]

Counsel for Claimant also argues that the PSOB regulation's definition of *Instrumentality* is unnecessary, as the PSOB Act does not define the term and asserts that when a term is not defined in statute, administrative agencies must give the term a commonly accepted meaning.[43] He offers such a meaning and urges that BJA apply it in this matter.

BJA is expressly authorized under 34 U.S.C. § 10285(a) to establish the rules and regulations necessary to implement the PSOB Act. The Court of Appeals for the Federal Circuit ("Federal Circuit") has recognized that this grant of rulemaking authority "reflects Congress's expectation that the BJA would 'be able to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law[.]'"[44] As the term "instrumentality" is not defined in law and is capable of different meanings based on the particular context in which it is used, BJA's act of defining it in its regulations is both appropriate and permissible.[45] The definition, lawfully promulgated following public notice and comment in 2006, is a reasonable interpretation of the term. Furthermore, the definition offered by counsel—"something by which an end is achieved"—is so broad as to invite uncertainty and litigation as to its meaning. Such a broad definition would easily include individuals found by the Federal Circuit in previous PSOB cases not to be covered by the PSOB Act; *e.g.*, individuals helping agencies achieve their ends, but who were hired, paid, and subject to termination by their private employers.[46]

---

[42] The Town's assertions also are consistent with the assertions apparently made by the South Country Ambulance Chief, Gregory Miglino, Jr., in a 2006 presentation published on the website of a news organization on Long Island, accessible here: https://www.bellport.com/vnews/vn_seenarchive_2006.htm (last visited March 28, 2018). The presentation was delivered as part of a public meeting. In the presentation, South Country Ambulance is described as being "**not** municipal government[,]" "**not** a taxing entity[,]" "**not** an arm of the government[,]" and "**not** the ambulance district." (Bolded texts in original.) The presentation also notes that South Country Ambulance is not bound by the New York General Municipal Law regarding bidding certain contracts, because South Country Ambulance "is not a municipality[.]" In addition, the presentation explains that one of the reasons why South Country Ambulance owns its rescue vehicles (instead of having the Town of Brookhaven own them, apparently) is to provide "a legal buffer for Taxpayers[.]"

[43] Supplemental Submission at 7.

[44] *See Groff v. United States,* 493 F.3d 1343, 1350 (Fed. Cir. 2007) (citing *United States v. Mead Corp.,* 533 U.S. 218, 229 (2001)).

[45] *See Chevron U.S.A., v. Nat. Res. Def. Council,* 467 U.S. 837, 843 (1984) (providing that "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute"); *cf. Hawkins v. United States,* 469 F.3d 993, 1004 (Fed. Cir. 2006) (providing that "the BJA's regulatory interpretation [of the PSOB statutory term] 'line of duty' . . . must be upheld unless it is 'arbitrary, capricious, or manifestly contrary to the statute'") (other citation omitted).

[46] *See Moore v. Dep't. of Justice,* 760 F.3d 1369, 1375 (Fed. Cir. 2014) ("Here, as in *Groff,* we must again defer to the BJA's interpretation, under which employees of independent contractors do not qualify as 'public safety officers' for the purposes of the Benefits Act."); *Groff,* 493 F.3d at 1353 - 1355, *aff'g LaBare v. United States,* 72 Fed. Cl. 111, 120 – 121, 124 (2006) ("this court is reluctant to read . . . legislation, which provides benefits to public safety officers 'serving a public agency in an official capacity,' . . . in such a way as to include employees of private contractors in the statutory terms 'public' and 'official,' without some signal from the legislative branch."); *see also Holstine v. Law Enforcement Assistance Admin.,* No. 80-7477, slip op. at 1 - 2 (9th Cir., Aug. 4, 1982) (*per curiam*), 688 F.2d 845, 846 (table) (PSOB claimant "failed to show that Congress intended to compensate privately-

As to Claimant's other arguments, it is acknowledged that the Ambulance Company's provision of ambulance service is, at least to some extent, performance of a governmental function, and that New York law governing the disclosure of information does not distinguish between agencies and entities performing services on their behalf. It is common for governments to provide governmental services through independent contractors; however, this has never been sufficient in and of itself to establish that an entity is a public agency or instrumentality thereof under the PSOB Act and implementing regulations. Similarly, that a state law does not distinguish between an entity and public agency for one purpose (*e.g.*, disclosure of information) does not compel BJA to treat it as such for purposes of the PSOB Act. The PSOB Act and its regulations, not those governing a different jurisdiction or established for a different purpose, are what must be considered in determining eligibility for benefits,[47] particularly as the PSOB Act itself expressly commands that BJA is to make its PSOB claim determinations "under regulations issued pursuant to th[e Act]."

Based on the foregoing, I find that the Ambulance Company is not an instrumentality of the Town of Brookhaven, within the meaning of the PSOB Act and its implementing regulations. Although the Ambulance Company has legal existence as a non-profit corporation, it is not organized and controlled such "that it operates and acts solely and exclusively as a functional part of the relevant government"—*i.e.*, the Town. The record shows that the Ambulance Company is an independent contractor, that it does not operate under the direction and control of the Town and that the Town does not control the daily operation of the Ambulance Company (or any ambulance company) or the work of its employees.[48] Most importantly, the Town has not taken legal responsibility for the tortious acts or omissions of the Ambulance Company, and it has declined to extend its limited sovereign immunity to the Ambulance Company.[49]

<u>Eligibility for death benefits as would be provided to the survivor of a Town employee</u>

In addition to the requirement that a non-governmental entity employing a member of an ambulance crew or rescue squad must be an "instrumentality" of a public agency, the regulation also requires that the survivors of employees of such entity be eligible for death benefits on the same basis as a survivor of an employee of the government on whose behalf the entity acts would be.[50]

The Claimant, as EMT Miglino's surviving spouse, received a lump sum payment from the Town, pursuant to the Ambulance Workers' Length of Service Award Program (LOSAP)

---

employed persons engaged in firefighting activities, or that Congress believed there was a need to encourage the recruitment of such privately-employed persons"); *Chacon* v. *United States*, 32 Fed. Cl. 684, 689 (1995), *aff'd*, 48 F.3d 508 (Fed. Cir. 1995).

[47] *See Moore*, 760 F.3d at 1374 ("Neither the definition of 'employee' in the FLSA nor the definition in the Federal Tort Claims Act applies here. Rather, the Benefits Act is the governing statute, and it has defined a 'public safety officer' as 'an individual serving a public agency in an official capacity.'").

[48] Letter from Marie M. Michel, Senior Assistant Town Attorney, to Robert McMeekin, Hearing Officer, *RE; Relationship between the Town of Brookhaven and the South Country Ambulance Company*, dated Sept. 15, 2016.

[49] It also has not been shown that the Ambulance Company (or similarly situated entities) benefited from sovereign immunity prior to the statutory waiver of sovereign immunity by New York State.

[50] 28 C.F.R. § 32.3 (definition of *Public employee*).

11

established under New York law, which is paid only to volunteer ambulance workers.[51] Claimant also received workers' compensation death benefits based on a finding that EMT Miglino's activities while working on March 25, 2007, caused a myocardial infarction that led to his death.[52] Nothing in these decisions indicates that EMT Miglino's survivors received or were eligible to receive the same benefits as would be afforded to the survivors of a Town employee.

As the record has no evidence that EMT Miglino's survivors received or were eligible to receive the same death benefits as would be afforded survivors of a Town employee, I find that Claimant has not established that the Ambulance Company was an "instrumentality of a government described in the Act, at [34 U.S.C. 10284(8)] . . . whose survivors are eligible to receive death benefits [ ] from such government on the same basis as an employee of that government . . . or his survivors, would."[53]

<u>Ambulance Company as an Independent Contractor</u>

PSOB regulations also provide that the term *Employee* does not include an independent contractor, which is defined as including an employee, volunteer, servant, or agent of an independent contractor. Absent from the agreement between the Town and the Ambulance Company are any provisions that indicate anything other than an independent contractor relationship. There is nothing to suggest that the Town has a significant and active role in the hiring, training, supervision, or discipline of the Ambulance Company's employees and volunteers. Corroborating this, the Town, through its counsel, has affirmatively stated that it "does not regulate the daily operation of any ambulance company and by extension, their employees" and that it "does not participate in or supervise the employment decisions, policies, protocol, or procedures or the operation of the South Country Ambulance Company."[54]

Viewing the evidence in the record as to the relationship between the Town and the Ambulance Company in its entirety, I find that the relationship is contractual and that the Ambulance Company is an independent contractor of the Town.[55] In addition to the other reasons given as to why EMT Miglino was not an employee of a governmental entity or an instrumentality thereof under PSOB regulations, his status as a volunteer of an independent contractor also precludes him from being considered an employee in this context.

<u>Other PSOB determinations involving EMTs serving a volunteer ambulance company</u>

Counsel for Claimant asserts that PSOB Office determinations in 2008 approving benefits in two claims involving members of a New York volunteer ambulance company compels a similar outcome in this matter.[56] Counsel asserts that the 2008 claims involving

---

[51] *See* N.Y. Gen. Mun. Law, Ch. 24, Art. 11-a., § 219 (McKinney, 2018).

[52] State of New York, Workers' Compensation Board, Memorandum of Board Panel Decision, *In re Gregory Miglino (dec'd), WCB case #A408 0005*, 5 Filed Jan. 3, 2014.

[53] 28 C.F.R. § 32.3 (definition of *Public employee*).

[54] *Id.* at 2.

[55] Letter from Marie M. Michel, Senior Assistant Town Attorney, to Robert McMeekin, Hearing Officer, *RE; Relationship between the Town of Brookhaven and the South Country Ambulance Company*, dated Sept. 15, 2016.

[56] Supplemental Submission at 3 (referring to PSOB Office determinations for Heidi Behr, PSOB No. 2006-150 and William Stone, PSOB No. 2005-295).

members of a volunteer ambulance company, established under New York law, who were injured while providing ambulance services pursuant to a contract with a town is "identical" to this claim.[57] Counsel asserts that failing to treat this matter similarly would be "arbitrary and capricious."[58]

The 2008 claims involved provision of ambulance services to the Town of Riverhead by a volunteer ambulance company, pursuant to a contract between the company and the Town. Although the contract with the Town of Riverhead was not provided to the PSOB Office at the time it made its determinations in 2008, from what counsel has submitted, it appears that that contract also included a hold-harmless clause, a requirement that the ambulance company maintain workers compensation and employee disability insurance for its employees, and a requirement that the ambulance company purchase specific liability insurance for its vehicles and an errors and omissions policy.[59] Unlike the case with the record in this matter, the contract between the Town of Riverhead and the Riverhead Ambulance Company was not part of the record before the agency in 2008 when it determined those claims.[60]

The current rule defining instrumentality was published in 2006, *after* the fatal injuries suffered by the decedents in the 2008 claims. Until enactment of what currently is the final proviso of what is now 34 U.S.C. § 10287, which directly addressed the issue,[61] the applicability of PSOB regulatory amendments that are promulgated after the date of a fatal injury was unclear.[62] Accordingly (and unsurprisingly), BJA's practices in determining such claims have evolved with the agency's experience in the twelve years since that rulemaking. Moreover, decisions of the Federal Circuit since then involving the related issue of whether an individual was *serving a public agency in an official capacity* have also shaped the agency's practices in applying the definition of "instrumentality" and gathering information sufficient to determine a claim.[63] In any event, those claims in 2008 were determined on the basis of the record then

---

[57] *Id.* at 9-10.

[58] *Id.* at 10.

[59] *See* Agreement between the Town of Riverhead Ambulance District and the Riverhead Volunteer Ambulance Corps, Inc., made Jan. 1, 2004.

[60] Claimant's counsel indicated that he obtained the Riverhead contract from the Town Clerk of Riverhead through a freedom of information law request. Tr. 102. The contract was provided as Hearing Exhibit 32.

[61] "[A]any regulations promulgated by the Bureau under [the PSOB Act] before, on, or after January 2, 2013, shall apply to any matter pending on, or filed or accruing after, the effective date specified in the regulations."

[62] *Compare, e.g., Groff,* 493 F.3d at 1351 n.2 ("We also do not rest our decision on the revised version of the BJA's regulations, adopted in August 2006, which provide more detailed guidance as to the meaning of the statutory term 'public safety officer.' The revised regulation, 28 C.F.R. § 32.3 (effective Sept. 11, 2006), reflects the BJA's earlier adjudicative determinations and makes clear that contract employees … would not be regarded as public safety officers within the meaning of the statute. However, the government did not argue that the new regulation could serve as a basis for upholding the BJA's determinations in these cases, and at oral argument the government expressly declined to rely on the new regulation. Accordingly, we do not rely on that regulation as the basis for our decision, although we note that the Supreme Court has held that legal positions taken in properly promulgated regulations are entitled to Chevron deference even if the regulations are promulgated after the administrative decision in question, and indeed even if they are promulgated in response to the very litigation that is under review. *See Smiley v. Citibank (S.D.), N.A.,* 517 U.S. 735, 740-41 … (1996); *United States v. Morton,* 467 U.S. 822, 836 n. 21 … (1984)."); *with Woodward* v. *Dep't of Justice,* 598 F.3d 1311, 1315 (Fed. Cir. 2010) (requiring the agency to apply a regulation, as in effect prior to Sep. 11, 2006, even though it had since been repealed).

[63] *See Moore,* 760 F.3d at 1374-75 (concluding that employees of an independent contractor providing services to a government entity pursuant to a contract were not serving a public agency in an official capacity; *see also Groff,*

before the agency, and BJA's *current* practice in determining claims is to ensure the completeness of the record by obtaining copies of contracts when it becomes aware that services may be provided by an independent contractor to a government entity pursuant to a contract. That BJA's administrative practices have evolved over a decade and more does not make them "arbitrary and capricious"; nor does pointing to two claims where (based on what is known now) the agency seems to have made an error, compel a different outcome inconsistent with lawfully-promulgated regulations. Finally, even if the Claimant here were similarly situated to the claimants there (which, by the evidence in the respective records, they are not), BJA is not estopped from correctly applying the law now. *Cf., e.g., OPM* v. *Richmond*, 496 U.S. 414, 434 (1990) ("As for monetary claims, it is enough to say that this Court has never upheld an assertion of estoppel against the Government by a claimant seeking public funds.") Accordingly, I find counsel's argument here unpersuasive.

### *Injury and Line of Duty Injury*

As the record does not establish that EMT Miglino was a public safety officer, this determination does not address and makes no findings regarding the other eligibility requirements for death benefits under the PSOB Act and implementing regulations.

### *Substantial Weight*

By law, BJA must give substantial weight to "evidence and all findings of fact presented by a State, local, or Federal administrative or investigative agency regarding eligibility for death or disability benefits."[64] The record shows that the Claimant received LOSAP benefits and workers' compensation death benefits; agency decisions for both benefits are of record.

The LOSAP records provided by the Claimant show the creditable service of EMT Miglino that was used to calculate Claimant's payment of volunteer ambulance workers benefits. These records also show that EMT Miglino was an active volunteer member of South Country Ambulance from 2000 to 2007. The workers' compensation records show, among other things, that Gregory Miglino, Sr., was an EMT, that he volunteered for the ambulance service on March 25, 2007, that he went out with an ambulance upwards of five times that day, and that he complained to a co-worker of pain in his chest. As required by the law, I grant substantial weight to these "findings of fact."

The determination of the workers' compensation board that EMT Miglino's fatal heart attack was causally related to his activities while serving as an EMT for the Ambulance Company is a medico-legal conclusion based on evidence provided by lay and expert witnesses including Dr. Slutsky, who testified that EMT Miglino likely experienced a myocardial infarction when he lifted the heavy bag.[65] As this is a legal conclusion (and, one that is, in any event, unrelated to the legal issues actually determined in this matter—whether the Ambulance Company is an instrumentality under PSOB implementing regulations and whether Mrs. Miglino

---

493 F.3d at 1354-55.

[64] 34 U.S.C. § 10285(b)(2).

[65] *See* State of New York, Workers' Compensation Board, Memorandum of Board Panel Decision, *In re Gregory Miglino (dec'd), WCB case #A408 0005*, 4-5 Filed Jan. 3, 2014.

is eligible to receive the same death benefits that would be provided to the survivor of a Town employee), rather than a finding of fact, BJA is not required to give it substantial weight.[66]

## Conclusion

By all accounts, Gregory Miglino, Sr., honorably served South Country Ambulance and the Town of Brookhaven from 2000 to 2007 as an emergency medical technician. Nonetheless, to establish eligibility for death benefits under the PSOB Act, the evidence must establish that "it is more likely than not" that the decedent was a public safety officer. Based on my review of all the evidence of record, I do not find that it supports a finding that EMT Miglino was a public safety officer as defined in the PSOB Act and implementing regulations. Therefore, it is my determination that this claim must be, and hereby is **denied**.[67]

Jon Adler
Director

April 5, 2018
Date

## Appeal Rights

Relief from this determination may be sought via appeal to the United States Court of Appeals for the Federal Circuit, pursuant to 34 U.S.C. § 10287. Such appeal must be filed "not later than 90 days after the date of which the Bureau [of Justice Assistance] serves notice" of this determination on the claimant. *Id.* Notice of this determination is served by the PSOB Office on the day that it is "(1) [m]ailed, by U.S. mail, addressed to the individual (or to his representative) at his (or his representative's) last address known to [the PSOB Office]; (2) [d]elivered to a courier or other delivery service, addressed to the individual (or to his representative) at his (or his representative's) last address known to [the PSOB Office]; or (3) [s]ent by electronic means such as telefacsimile or electronic mail, addressed to the individual (or to his representative) at his (or his representative's) last telefacsimile number or electronic mail address, or other electronic address, known to [the PSOB Office.]" 28 C.F.R. § 32.2(c).

---

[66] *Cf. Demutiis* v. *United States*, 291 F.3d 1373 (Fed. Cir. 2002) (A local "'line of duty' determination involv[ing] the same ultimate question as that under the [PSOB] Act—did [the] death occur in the line of duty?[—] is a legal determination," and a legal requirement that the Bureau give substantial weight to the evidence and findings of fact presented by administrative and investigative agencies does not apply "to their legal conclusions. Although the Bureau could give the [local agency]'s legal conclusion whatever weight, if any, it deemed appropriate, it was not required to give it any weight.").

[67] **Note regarding Fees for Representation:** If a representative (such as an attorney) has provided any services in connection with this claim, the representative must obtain authorization pursuant to 28 C.F.R. § 32.7 before seeking any compensation whatsoever for such services from the claimant. *See* 34 U.S.C. § 10285(a).

The above determination is based upon the Bureau of Justice Assistance Director's *de novo* review of the record before the agency, which includes the following:

A. Evidence, correspondence, and other information associated with the record that was before the PSOB Office:

001 Claim for Death Benefits, submitted by Susan Miglino, dated March January 13, 2010, with list of surviving children and their marital status;

004 Certificate of Marriage Registration for Gregory Charles Miglino and Susan Livingston, certified by the City Clerk of the City of New York, January 15, 1968 (signature illegible);

005 Certificate of Birth for Gregory Miglino, (Certification signature and date illegible);

006 Certificate of Birth for Suzette Miglino, from Brookhaven Memorial Hospital, with accompanying Social Security Card, Date of Birth: October 27, 1970;

007 Certificate of Birth for James Joseph Miglino, from Brookhaven Memorial Hospital, Date of Birth: January 3, 1972;

008 Certificate of Birth for Robert Miglino, from Brookhaven Memorial Hospital, Date of Birth: March 31, 1974;

009 Certified Transcript of Birth for Jacelyn Miglino, from State of New York, Department of Health, Date of Birth: January 21, 1978;

010 Report of Public Safety Officer's Death, submitted by Gregory C. Miglino, Jr., South Country Ambulance, dated January 13, 2010, with list of children and their marital status;

013 Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Public Safety Officers' Benefits Program (Dear Sir/Madam), dated January 13, 2010;

014 Suffolk County Fire Rescue Incident Report, dated March 26, 2007;

015 Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, dated July 16, 2010 (RE: Verification of Benefits);

016 Email communication between Karen Araujo, PSOB Benefits Specialist, and Gregory C. Miglino, Jr., Chief, South County Ambulance, July 23, 2010;

017 Email communication between Farrah Surin, PSOB Office, and Gregory C. Miglino, Jr., Chief, South Country Ambulance, dated November 2, 2010;

018 Letter from Mark Lesko, Supervisor, Town of Brookhaven Long Island, to PSOB Office (Dear Sir/Madam), dated January 12, 2010, with the following enclosures:
    019 Resolution Submission #1003-007, Meeting Of: October 16, 2007;
    020 Adopted Resolution #1003-07, Meeting Of: October 16, 2007;

021 Letter from David Moran, Assistant Town Attorney, Town of Brookhaven, Long Island, to Gregory C. Miglino, Jr., President, Brookhaven Ambulance Company, Inc., dated December 19, 2007, with enclosure;
    022 Agreement between the Town of Brookhaven and Brookhaven Ambulance Company, Inc., signed by Jack Schnirman, Deputy Supervisor, and Pamela Betheil, Town Clerk, agreement made October 16, 2007, with

applicable notaries;

042     Letter from the Board of Directors of South Country Ambulance, indicating passage of resolution on November 5, 2007, signed by Gregory C. Miglino, Jr., President, and Jamie Johnson, Secretary, South Country Ambulance (undated);

043     Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to PSOB (Dear Sir/Madam), dated January 13, 2010;

044     Detailed Statement of Circumstances, from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, dated July 16, 2010;

047     24 Hour Activity Report, from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, dated July 16, 2010;

048     South County Ambulance Sign-In Sheet (Time: 6:56), dated March 25, 2007;

049     South County Ambulance Sign-In Sheet (Time: 8:54), dated March 25, 2007;

050     New York State Department of Health EMS, Trauma - Prehospital Care Reports, dated March 25, 2007;

052     Certificate of Death for Gregory Miglino, Sr., from New York County Department of Health, Date of Death: March 26, 2007;

053     Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to PSOB Office (Dear Sir/Madam), dated January 13, 2010;

054     Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, Re: Toxicology Report, dated July 16, 2010;

055     PSOB Office Determination, dated January 12, 2011;

058     Notification of PSOB Office Determination, from Valerie Neal (signing for Hope Janke, PSOB Director), to Susan Miglino, dated February 17, 2011;

059     Notification of PSOB Office Determination, from Hope Janke, PSOB Director, to Gregory C. Miglino, Jr., Chief, South Country Ambulance, dated February 17, 2011;

B.    Evidence, correspondence, and other information associated with the record that was before the Hearing Officer, including that in paragraph A above:

060     Request for Hearing Officer Appeal, from Susan Miglino, to Hope Janke, PSOB Office Director, dated March 15, 2011;

061     Email communications between Hope Janke, PSOB Office Director, and Susan Miglino, dated March 15, 2011, through March 21, 2011;

064     Acknowledgement of Hearing Officer Appeal from Felicia Logan-Epps, PSOB Paralegal Specialist, to Susan Miglino, dated May 5, 2011;

065     Hearing Officer Transcript, dated June 18, 2012, with the following exhibits:

      185     Exhibit 1 - New York State Department of Health EMS, Trauma - Prehospital Care Report for Christopher Rupolo, dated March 25, 2007;

      186     Exhibit 2 - New York State Department of Health EMS, Trauma - Prehospital Care Report, for Thomas Pickering, dated March 25, 2007;

      187     Exhibit 3 - New York State Department of Health EMS, Trauma - Prehospital Care Report for John Jacobs, dated March 25, 2007, with:

           188     South Country Ambulance Sign-In Sheet (Time: 6:56), dated March 25, 2007 (This was likely intended to be part of Exhibit 3);

189    Exhibit 4 - South Country Ambulance Sign-In Sheet (Time: 8:54), dated March 25, 2007;
190    Exhibit 5 - Letter from Jamie Johnson, to "Whom it may Concern," dated June 15, 2012;
191    Exhibit 6 - Certification for New York State Emergency Medical Technician/Certified First Responder, for Gregory Miglino, Sr.;
192    Exhibit 7 - South Country Ambulance Non Incident Event Attendance for Gregory Miglino, Sr., Final Date:  December 31, 2007;
198    Centerench Fire Department Emergency Information Sheet, dated March 26, 2007 (Per the index of exhibits, this was likely intended to be Exhibit 8);
199    Exhibit 9 - Certificate of Death for Gregory Miglino, Sr., from New York State Department of Health, Date of Death:  March 26, 2007;
201    Exhibit 10 – Letter from Gregory C. Miglino, Jr., Chief, South Country Ambulance, to Karen Araujo, PSOB Benefits Specialist, Responding to request for more detailed 24 hour activity report, dated July 16, 2010;
204    Exhibit 11 - Letter from Robert A. Slutsky, M.D., FACP, FACC, to "Whom it may Concern," dated November 28, 2011;
206    Exhibit 12 - PSOB Office Determination dated January 12, 2011;
209    Exhibit 13 - New York State Department of Health, Ambulance Service Certificates for Brookhaven Ambulance Company, Inc. D.B.A. South Country Ambulance, Issued:  March 18, 2011, and May 23, 2005;
211    Exhibit 14 –
    211    Letter from Mark Lesko, Supervisor, Town of Brookhaven, to PSOB (Dear Sir/Madam), dated January 12, 2010, with the following enclosures:
        212    Copy of Resolution Submission #1003-07, Meeting Of: October 16, 2007;
        213    Copy of Adopted Resolution No. 1003-07, Meeting Of: October 16, 2007;
    214    Letter from the Board of Directors of South Country Ambulance, indicating passage of resolution on November 5, 2007, signed by Gregory C. Miglino, Jr., President, and Jamie Johnson, Secretary, South Country Ambulance (undated);
    215    Agreement between the Town of Brookhaven and Brookhaven Ambulance Company, Inc., signed by Jack Schnirman, Deputy Supervisor, and Pamela Betheil, Town Clerk, agreement made October 16, 2007, with applicable notaries;
235    Exhibit 15 - Letter from Brian Foley, Supervisor, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance Company, dated December 21, 2006;
236    Exhibit 16 –
    236    Letter from Kim Brandeau, Commissioner of Finance, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance District, dated July 16, 2007 (provided without worksheet);

237    Letter from Louis Valentino, Board of Directors, South Country Ambulance District, to Kim Bandeau, Finance Commissioner, Town of Brookhaven Long Island, dated July 31, 2007, with FY2008 Budget;

239    Exhibit 17 - Copy of Article 11-AAA - Defined Benefit Service Award Program for Volunteer Ambulance Workers;

242    Exhibit 18 - Memorandum from GLYNN and MERCEP, LLP, to Karen Wilutis, Esq., Marie Michael, Esq., and Joseph Mineo, dated January 7, 2005;

244    Exhibit 19 –

    244    Letter from Laurie LaFountain, Senior Vice President/Trust Officer, Glen Falls National Bank and Trust Company, to Susan Miglino, dated May 22, 2007 (check not provided with letter) with:

    245    Letter from Sandra Pangburn, ASA, EA, MAAA, PENFLEX, Inc., to Laurie LaFountain, Glenn Falls National Bank and Trust Company, Re: Town of Brookhaven – South Country Ambulance Service Award Program, dated May 17, 2007;

    246    Letter from George Kalamaras, Public Safety Administrator/Ambulance Coordinator, Town of Brookhaven Long Island, to Gregory Miglino, Chief, South Country Ambulance, dated May 11, 2007, with:

        247    Town Approval of Points Earned by Gregory Miglino, Sr., signed by Pamela Betheil, Town Clerk, Town of Brookhaven, South Country Ambulance Company Inc., Volunteer Ambulance Worker Service Award Program, dated May 8, 2007;

        248    Copy of Adopted Resolution #422-07, Meeting Of: March 27, 2007;

        250    Town of Brookhaven, Volunteer Ambulance Workers' Service Award Program, Designation of Beneficiary Form, signed by Gregory Miglino, Sr., dated December 11, 2003;

251    Exhibit 20 - South Country Ambulance Service Awards Report, Date Range: From January 1, 2006 to December 31, 2006;

253    Exhibit 21 - Letter from Herbert Huff, District Director, IRS, Department of the Treasury, to Brookhaven Ambulance Company Inc., dated Jan. 24, 1995;

257    Exhibit 22 –

    257    Letter from Michael Fink, Grant Coordinator, to Douglas Williams, Director, Department of State Charities, New York State Department of Taxation and Finance, dated May 20, 1991;

    258    Letter from Daniel Mihalek, Sales Tax - Exempt, Organizations Unit, New York State Department of Taxation and Finance, to Ellen Komosinski, dated November 19, 1990;

    259    Important Notice to Organizations Issued Exempt Organization Certifications, from New York State Department of Taxation and Finance (undated);

260     Exhibit 23 - Certification of Eligibility for Government/Official Plates, signed by Gregory C. Miglino, Jr., dated December 18, 2008, with:

         261     Photocopy of Vehicle Registration (2012 White Chevrolet Suburban);

262     Exhibit 24 - Suffolk County EMS Advanced Life Support Protocol Manual, dated January 2012;

265     Exhibit 25 - Public Bulletin from Department of Health Services, (RE: Suffolk County EMS System - Entry Requirements for Regional Emergency Medical Advisory Committee, ALS Provider Credentialing and Authorization and Re-Credentialing/Re Authorization);

269     Exhibit 26 - Letter from Dennis Russo, M.D., EMS Medical Director, County of Suffolk, Department of Health Services, to "Whom it may Concern," dated November 22, 2011;

270     Exhibit 27 – Westlaw Document for *Westchester Rockland Newspapers, Inc., v. Kimball*, 50 N.Y. 2d 575 (N.Y. 1980);

275     Exhibit 28 – Westlaw Document for *Ryan v. Mastic Volunteer Ambulance Co.*, 212 A.D. 2d 716 (N.Y. App. Div. 2 Dept., 1995);

278     Exhibit 29 - Excerpt from Article 1 - Volunteer Ambulance Workers' Benefit Law;

282     Exhibit 30 –

         282     Notification of PSOB Determination for Heidi Behr, from Hope Janke, PSOB Director, to Keith Lewin, President, Riverhead Volunteer Ambulance Corps, Inc., dated February 19, 2008 (redacted information);

         283     Notification of PSOB Determination for Heidi Behr, from Hope Janke, PSOB Director, dated February 19, 2008 (redacted information);

         284     PSOB Office Determination for Heidi Behr, dated November 16, 2007 (redacted information);

         286     Report of Public Safety Officer's Death for Heidi Behr, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 27, 2005 (redacted information);

288     Exhibit 31 –

         288     Notification of PSOB Determination for William Stone, from Hope Janke, PSOB Director, to Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc., dated May 13, 2008 (redacted information);

         289     Notification of PSOB Determination for William Stone, from Hope Janke, PSOB Director, dated May 13, 2008 (redacted information);

         290     PSOB Office Determination for William Stone, dated April 9, 2008 (redacted Information);

         292     Report of Public Safety Officer's Death for William Stone, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 10, 2005 (redacted information);

294    Exhibit 32 –
        294    Letter from Christopher Kent, Deputy Town Attorney, to Barbara Grattan, Town Clerk, Town of Riverhead, dated June 21, 2004, with:
               295    Agreement between Town of Riverhead Ambulance District and Riverhead Volunteer Ambulance Corps, Inc., signed by Philip Cardinale, Supervisor, and Keith Lewin, President, Town of Riverhead Ambulance District, made on January 1, 2004;
        309    Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Riverhead Ambulance Corps, Inc., (Dear Gentlemen), dated May 10, 2004, with:
               310    Copy of Adopted Resolution # 398, dated May 4, 2004;
        311    Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with:
               312    Copy of Adopted Resolution #733, dated August 1, 2000;
        313    Meeting Minutes for Resolution #731, #732 and #733, dated August 1, 2000;
        315    Letter from J. Snead, Esq., (Counsel for the Claimant), to Freedom of Information Officer, Town of Riverhead (Dear Sir or Madam), dated April 3, 2012;
        316    Copy of South Country Ambulance Newsletter, dated June 1, 2011;
    317    Exhibit 33 - Copy of South Country Ambulance Company Donation Request Form;
318    Letter from Rafael Madan, General Counsel, U.S. Department of Justice, Office of Justice Programs, to J. Snead (Counsel for the Claimant), dated March 15, 2012, with the following enclosures (with some redacted information):
    320    Notification of PSOB Determination for William Stone, from Hope Janke, PSOB Director, to Ronald Rowe, President, Riverhead Volunteer Ambulance Corp, Inc., dated May 13, 2008;
    321    Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, dated May 13, 2008;
    322    Letter from Keith Lewin, President, Riverhead Volunteer Ambulance Corps, Inc., to Virginia Hinnant-Thomas, PSOB Benefits Specialist, dated May 7, 2007;
    323    Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000, with:
        324    Copy of Adopted Resolution #733, dated August 1, 2000;
    325    Public Safety Officers' Benefits Program, Claimant's Verification of Officer's Life Insurance Policies (for William Stone), signed June 28, 2006;
    326    Individual Acknowledgement for Claimant's Verification of Officer's Life Insurance Policies, dated June 28, 2006;

327     Affidavit by Phil Cardinale, Supervisor, Town of Riverhead,
        dated May 3, 2007;
328     Certification of Meeting Minutes dated August 1, 200, from Barbara
        Grattan, Town Clerk, Town of Riverhead, dated May 4, 2007, with:
        329     Meeting Minutes for Resolution #731, #732, and #733, dated
                August 1, 2000;
331     Notice of Decision for William Stone, from State of New York, Workers'
        Compensation Board, Date of Filing this Decision: January 23, 2006;
332     Claim for Death Benefits for William Stone, submitted August 31, 2005;
334     Report of Public Safety Officer's Death for William Stone, submitted by
        Ronald Rowe, President, Riverhead Volunteer Ambulance Corps, Inc.,
        dated December 10, 2005;
336     PSOB Office Determination for William Stone, dated April 9, 2008;
338     Hand-Written Note, with heading "RE: Heidi Behr";
339     Notification of PSOB Determination, for Heidi Behr, from Hope Janke,
        PSOB Director, to Keith Lewin, President, Riverhead Volunteer
        Ambulance Corp, Inc., dated February 19, 2008;
340     Notification of PSOB Determination for Heidi Behr, from Hope Janke,
        PSOB Director, dated February 19, 2008;
341     Claim for Death Benefits for Heidi Behr, dated March 3, 2006;
343     Report of Public Safety Officer's Death for Heidi Behr, submitted by
        Ronald Rowe, President, Riverhead Volunteer Ambulance Corps., Inc.,
        dated December 27, 2005;
345     PSOB Office Determination for Heidi Behr, dated November 16, 2007;
347     Letter from Thomas Nolan, (Counsel to Heidi Behr), to Eric Martin,
        PSOB Benefits Specialist, dated May 17, 2007, with the following
        enclosure;
        348     Meeting Minutes for Resolution #731, #732, and #733, dated
                August 1, 2000;
350     Certification of Meeting Minutes, from Barbara Grattan, Town Clerk,
        Town of Riverhead, dated May 14, 2007;
351     Letter from Barbara Grattan, Town Clerk, Town of Riverhead, to Bruce
        Talmage, President, RVAC, Riverhead Town Hall, dated August 3, 2000,
        with the following enclosure:
        352     Copy of Adopted Resolution #733, dated August 1, 2000;
353     Affidavit from Phil Cardinale, Supervisor, Town of Riverhead, dated
        May 3, 2007;
354     Notice of Decision for Heidi Behr, from State of New York, Workers'
        Compensation Board, Date of Filing this Decision: December 21, 2005;
355     Notice of Decision for Heidi Behr, from State of New York Workers'
        Compensation Board, Date of Filing of this Decision: March 1, 2006
356     Gregory C. Miglino, Jr., Chief, South Country Ambulance, Presentation: *South
        Country Ambulance*, https://www.bellport.com/vnews/vn_seenarchive_2006.htm
        (last visited March 28, 2018).
398     Hearing Officer Determination dated December 7, 2012;
413     Medical Report from Stephen Cina, M.D., P.C., Forensic Pathology Consultants,

dated April 16, 2013, with accompanying Curriculum Vitae;

442     Notice of remand based on enactment of the Dale Long Act Public Safety Officers' Benefits Act of 2012, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated November 27, 2013;

443     Email from L. Snead (Counsel for the Claimant), to Hope Janke, PSOB Director, dated February 5, 2014, with the following enclosure:

          444     Memorandum of Board Panel Decision for Gregory Miglino, Sr., signed by Loren Lobban, Mark Higgins, and Freida Foster, Board Members, Administrative Review Division, Workers' Compensation Board, Date of Filing this Decision: January 3, 2014;

449     Letter from J. Snead (Counsel for the Claimant), to Susan Miglino, dated April 16, 2014, with the following enclosure:

          450     Petition for Counsel Fees, from J. Snead (Counsel for the Claimant), to the Honorable Attorney General, dated April 16, 2014, with Exhibits 1 and 2;

459     Letter from Gregory C. Miglino, Jr., Chief of the Department, South Country Ambulance, to Hope Janke, PSOB Director, dated April 21, 2014;

461     Email from Eric Martin, PSOB Senior Benefits Specialist, to J. Snead (Counsel for the Claimant), dated July 3, 2014;

462     Email from L. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 29, 2014, with the following enclosure:

          463     Letter from J. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 17, 2014;

472     Notice of Decision for Gregory Miglino, Sr., from State of New York Workers' Compensation Board, Date of Filing of this Claim: December 14, 2012;

474     PSOB Office Remand Determination, dated July 31, 2015;

477     Notification of PSOB Remand Determination, from Hope Janke, PSOB Director, to Susan Miglino, c/o J. Snead (Counsel for the Claimant), dated August 25, 2015;

478     Letter from Robert McMeekin, PSOB Hearing Officer, to Edward Romaine, Supervisor, Town of Brookhaven, dated August 16, 2016;

480     Letter from Marie Michel, Senior Assistant Town Attorney, Town of Brookhaven Long Island, to Robert McMeekin, PSOB Hearing Officer, dated September 15, 2016;

483     Hearing Officer Determination dated April 13, 2017;

501     Notification of Hearing Officer Determination, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated April 25, 2017;

502     Attorney Fee Letter, from Hope Janke, PSOB Director, to J. Snead (Counsel for the Claimant), dated April 25, 2017;

C. Evidence, correspondence, and information associated with the record that was before the BJA Director, including that in paragraphs A and B above:

503     Emailed Request for BJA Director Appeal, from J. Snead (Counsel for the Claimant), to Gary Vasquez, PSOB Paralegal Specialist, dated May 22, 2017;

504     Acknowledgement of Request for BJA Director Appeal, from Hope Janke, PSOB Director, to Susan Miglino c/o J. Snead (Counsel for the Claimant), dated May 26, 2017;

505    Claimant's Supplemental Submission on Director's Review from J. Snead (Counsel for the Claimant), to the Department of Justice, Office of Justice Programs, dated July 24, 2017, with the following enclosures:

    518    Attachment 1:

        519    Letter from J. Snead (Counsel for the Claimant), to Eric Martin, PSOB Senior Benefits Specialist, dated July 17, 2014;

        528    Email from Eric Martin, PSOB Senior Benefits Specialist, to J. Snead (Counsel for the Claimant), dated July 3, 2014;

    529    Exhibit 1:

        530    Letter from Mark Lesko, Supervisor, Town of Brookhaven, Long Island, to Public Safety Officers' Benefits Program (Dear Sir/Madam), dated January 12, 2010;

        531    Copy of Adopted Resolution #1003-07, Meeting Of: October 16, 2007;

        532    Resolution Submission #1003-07, Meeting Of: October 16, 2007;

    533    Exhibit 2:

        534    Memorandum from GLYNN and MERCEP, LLP, to Karen Wilutis, Esq., Marie Michel, Esq., and Joseph Mineo, dated January 7, 2005;

    536    Exhibit 3:

        537    Letter from George Kalamaras, Public Safety Administrator/Ambulance Coordinator, Town of Brookhaven Long Island, to Gregory Miglino, Jr., Chief, South Country Ambulance, dated May 11, 2007;

        538    Town Approval of Points Earned by Gregory Miglino, Sr., signed by Pamela Betheil, Town Clerk, Town of Brookhaven, South Country Ambulance Company Inc., Volunteer Ambulance Worker Service Award Program, dated May 8, 2007;

        539    Copy of Adopted Resolution #422-07, Meeting Of: March 27, 2007;

        541    Letter from Sandra Pangburn, ASA, EA, MAAA, PENFLEX Inc., to Laurie LaFountain, Senior Vice Present/Trust Officer, Glens Falls National Bank and Trust Company, dated May 17, 2007;

        542    Letter from Laurie LaFountain, Senior Vice President/Trust Officer, Glen Falls National Bank and Trust Company, to Susan Miglino, dated May 22, 2007;

    543    Exhibit 4:

        544    Notice of Decision for Gregory Miglino, Sr., from State of New York, Workers' Compensation Board, Date of Filing this Decision: December 14, 2012;

        546    Notice to Injured Worker from State of New York, Workers' Compensation Board (undated);

            547    Memorandum of Board Panel Decision for Gregory Miglino, Sr., signed by Loren Lobban, Mark Higgins, and Freida Foster, Board Members, Administrative Review Division, Workers' Compensation Board, Date of Filing

this Decision:  December 14, 2012;

552    Attachment 2:

    553    Letter from Marie Michel, Senior Assistant Town Attorney, Town of Brookhaven Long Island, to Eric Martin, PSOB Senior Benefits Specialist, dated July 28, 2014;

554    Attachment 3:

    555    Letter from Rafael Madan, General Counsel, Department of Justice, Office of Justice Programs, to J. Snead (Counsel for the Claimant), dated March 15, 2012, with the following enclosures (with some redacted information):

        557    PSOB Office Determination for William Stone, dated April 9, 2008;

        559    PSOB Office Determination for Heidi Behr, dated November 16, 2007;

        561    Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, to Ronald Rowe, President, Riverhead Volunteer Ambulance Corp, Inc., dated May 13, 2008;

        562    Notification of PSOB Office Determination for William Stone, from Hope Janke, PSOB Director, dated May 13, 2008;

        563    Letter from Keith Lewin, President, Riverhead Volunteer Ambulance Corps, Inc., to Virginia Hinnant-Thomas, PSOB Benefits Specialist, dated May 7, 2007;

        564    Notice of Decision for William Stone, from State of New York, Workers' Compensation Board, Date of Filing of this Claim:  January 23, 2006;

        565    Claim for Death Benefits for William Stone, dated August 31, 2005;

        567    Report of Public Safety Officer's Death for William Stone, submitted by Ronald Row, President, Riverhead Volunteer Ambulance Corps, Inc., dated December 10, 2005;

        569    Hand-Written Note, with heading, "Heidi Behr";

        570    Notification of PSOB Office Determination for Heidi Behr, from Hope Janke, PSOB Director, to Keith Lewin, President, Riverhead Volunteer Ambulance Corps., Inc., dated February 19, 2008;

        571    Notification of PSOB Office Determination for Jean Behr, from Hope Janke, PSOB Director, dated February 19, 2008;

        572    Claim for Death Benefits for Heidi Behr, dated March 3, 2006;

        574    Report of Public Safety Officer's Death for Heidi Behr, submitted by Ronald Rowe, President, Riverhead Volunteer Ambulance Corps., Inc., dated December 27, 2005;

        576    Letter from Thomas Nolan, (Counsel for the Claimant -

Heidi Behr), to Eric Martin, PSOB Senior Benefits
Specialist, dated May 17, 2007, with the following
enclosure:

577    Meeting Minutes for Resolution #731, #732 and
#733, dated August 1, 2000;

579    Letter from Barbara Grattan, Town Clerk, Town of
Riverhead, to Bruce Talmage, President, RVAC, Riverhead
Town Hall, dated August 3, 2000, with:

580    Copy of Adopted Resolution #733, dated August 1,
2000;

581    Affidavit from Phil Cardinale, Supervisor, Town of
Riverhead, dated May 3, 2007;

582    Notice of Decision for Heidi Behr, from State of New
York, Worker's Compensation Board, Date of Filing of this
Claim: December 21, 2005;

583    Notice of Decision for Heidi Behr, from State of New
York, Worker's Compensation Board, Date of Filing of this
Claim: March 10, 2006;

584    Letter from Barbara Grattan, Town Clerk, Town of
Riverhead, to Bruce Talmage, President, RVAC, Riverhead
Town Hall, dated August 3, 2000, with:

585    Copy of Adopted Resolution #733, dated August 1,
2000;

586    Public Safety Officers' Benefits Program, Claimant's
Verification of Officer's Life Insurance Policies (for
William Stone), dated June 28, 2006;

587    Affidavit from Phil Cardinale, Supervisor, Town of
Riverhead, dated May 3, 2007;

588    Certification of Meeting Minutes of August 1, 2000, from
Barbara Grattan, Town Clerk, Town of Riverhead, dated
May 14, 2007, with:

589    Meeting Minutes for Resolution #731, #732, and
#733, dated August 1, 2000;

591    Attachment 4:

592    Memorandum of Board Panel Decision for Gregory Miglino, Sr.,
signed by Loren Lobban, Mark Higgins, and Freida Foster, Board
Members, Administrative Review Division, Workers'
Compensation Board, Date of File this Decision: January 3, 2014;

597    Notice of Decision for Gregory Miglino, from State of New York,
Workers' Compensation Board, Date of Filing of this Decision:
December 14, 2012;

599    Notice of Injured Worker for Gregory Miglino, Sr., from State of
New York, Workers' Compensation Board, (undated);

600    Letter from Stephen E. Boyd, Assistant Attorney General, Department of Justice,
Office of Legislative Affairs, to Congressman Lee M. Zeldin, dated January 16,
2018; and

601    Letter from Gregory C. Miglino, Jr., Chief of the Department, South Country Ambulance, to William Doyle, Aide to Congressman Lee Zeldin, dated March 1, 2018.

## **CERTIFICATE OF SERVICE**

I hereby certify under penalty of perjury that on this 27th day of August, 2018, a copy of the foregoing "CERTIFIED LIST" was filed electronically.


  **X**   This filing was served electronically to all parties by operation of the Court's electronic filing system.

/s/ Albert S. Iarossi
Albert S. Iarossi
